NATURAL RESOURCES DEFENSE
COUNCIL, INC., et al., Plaintiffs,

v.

Lee M. THOMAS, et al., Defendants,

Lead Industries Association, et
al., Intervenors.

Civ. A. No. 82–2137.

United States District Court,
District of Columbia.

July 15, 1988.

Ronald J. Wilson, Washington, D.C., for
plaintiffs.

Lawrence E. Blatnik, Land and Natural
Resources Div., U.S. Dept. of Justice,
Washington, D.C., for Federal defendants.

Edwin H. Seeger, Richard T. Witt, Wash-
ington, D.C., for defendant-intervenor Lead
Indus. Ass'n, Inc.

Robert A. Emmett, Washington, D.C.,
for defendant-intervenor St. Joe Minerals
Corp.

OPINION AND ORDER

JOYCE HENS GREEN, District
Judge.

Congress enacted the Clean Air Act, 42
U.S.C. §§ 7401 et seq., "to protect and en-
hance the quality of the Nation's air re-
sources so as to promote the public health
and welfare and the productive capacity of
its population." 42 U.S.C. § 7401(b)(1).
This case vividly demonstrates, however,
that the Act's laudable goal is more easily
stated than it is achieved. Plaintiffs have
now moved to enforce, and defendants to
modify, this Court's July 26, 1983 Order
and Decree, which established a timetable
for implementation of state and federal
plans to help ameliorate the dangers posed
by airborne lead pollution.[1]

I. The Statutory Scheme

The Clean Air Act Amendments of 1970
were passed as "a drastic remedy to what
was perceived as a serious and otherwise
uncheckable problem of air pollution."
Union Electric Co. v. EPA, 427 U.S. 246,
256, 96 S.Ct. 2518, 2525, 49 L.Ed.2d 474
(1976). After earlier efforts at air pollu-
tion control—such as the Clean Air Act of
1963 and the Air Quality Act of 1967—
proved ineffective because of resistance at
the state and local level, "Congress reacted
by taking a stick to the States" and "im-
posed upon [the Environmental Protection
Agency] and the States a comprehensive
planning task of the first magnitude which
was to be accomplished in a relatively short
time." Train v. NRDC, 421 U.S. 60, 64, 68,
95 S.Ct. 1470, 1474, 1476, 43 L.Ed.2d 731
(1975).

The process of air pollution cleanup be-
gins when the Administrator of the Envi-
ronmental Protection Agency (EPA) places
an air particulate on a list of substances
"which may reasonably be anticipated to
endanger public health or welfare." 42
U.S.C. § 7408(a)(1)(A). Within twelve
months of that time, the Administrator

1. In addition, several lead companies have
moved for leave to file an amicus curiae brief
on behalf of defendants. Inasmuch as plaintiffs

have not opposed that motion, see Plaintiff's
Response at 3, it will be granted.

must publish an air quality criteria document, which describes the adverse effects of the pollutant on the public, and a proposed national ambient air quality standard, which sets the acceptable level of concentration consistent with an adequate margin of public health and safety. *See* 42 U.S.C. §§ 7408(a)(2) & 7409(a)(2). The final national ambient air quality standard must be promulgated within the next 90 days. *Id.* § 7409(a)(1)(B).

Although the Act establishes a cooperative undertaking to achieve pollution control, the states "have the primary responsibility for assuring air quality" within their boundaries. 42 U.S.C. § 7407(a). Accordingly, each state is required to submit, within nine months after the date on which a pollutant is placed on the Administrator's list, a state implementation plan (SIP) that details the state's program for implementing the national air quality standards. The Administrator then has four months within which to approve or disapprove the SIP. *See* 42 U.S.C. § 7410(a)(2). If the plan is disapproved or if no plan is submitted, the Administrator is required to "promptly prepare and publish" a proposed federal implementation plan (FIP) that achieves compliance with air standards. *Id.* § 7410(c)(1). A final FIP must be published by the Administrator within six months after the date on which SIPs were to have been submitted. 42 U.S.C. 7410(c)(1)(C).

Finally, the Act sets an outer limit on the time for attaining national air quality goals. State plans should seek to achieve the air standards "as expeditiously as practicable but ... in no case later than three years from the date of approval of such plan." 42 U.S.C. § 7410(a)(2)(A). The three-year clock begins ticking for each state either on the date on which its SIP is approved or on the date that a FIP is promulgated in its place.

**2.** For simplicity, the Court will refer to these plaintiffs collectively as "NRDC" or "plaintiffs."

**3.** For example, with respect to state plans that had been submitted and were awaiting agency action, the Administrator agreed to approve or publish a proposed disapproval by November 1,

## II. The History of This Litigation

Over a decade ago, on March 31, 1976, the Administrator of EPA placed lead on the list of airborne pollutants that posed a danger to the public health and welfare. Beginning a trend that would continue, the Administrator's final rule setting a national ambient air quality standard for lead was not passed until October 5, 1978, approximately 18 months after the deadline established by the Act.

The Administrator and the states were also unable to comply with the statutory directives for submission and approval of SIPS and FIPS: as of July 1982, only 19 state plans had been approved. Accordingly, on July 30, 1982, the Natural Resources Defense Council and several other plaintiffs [2] filed suit to compel the EPA and its Administrator to either approve pending state plans or to disapprove the SIPS and pass FIPS instead. After a period of settlement negotiations, the parties submitted, and this Court approved, a proposed Order and Decree, which noted that the parties had agreed to resolve the litigation in accordance with a 17–page Settlement Agreement. *See* July 26, 1983 Order and Decree (July 1983 Order). In the Settlement Agreement, the parties recognized that the duties created by the Clean Air Act had not been fulfilled with respect to lead pollution, divided the states without approved SIPS or final FIPS into three groups and established new deadlines for action by EPA for each group of states.[3]

On August 20, 1986, however, NRDC filed a motion to enforce the July 1983 Order. Although acknowledging that the Administrator had adhered to many of the deadlines in the Settlement Agreement, plaintiffs noted that, with respect to four major industrial states (Alabama, Indiana, Nebraska and New Jersey), EPA had substantially failed to meet the dates set for approval of state plans or passage of feder-

1983. If a proposed disapproval was published, the Administrator was then required to file a final disapproval by May 1, 1984 and a proposed FIP by October 1, 1984. *See* Settlement Agreement at 4–5.

al plans.[4] As relief, NRDC asked this Court to (1) declare that defendants had violated the July 1983 Order and (2) set a strict timetable for action by EPA in those four states, with all agency action taken within 90 days of a ruling by the Court.[5]

On September 26, 1986, defendants opposed plaintiffs' motion and filed their own motion to modify the July 1983 Order. Defendants stated that plaintiffs' proposed schedule was unworkable and that the agency was moving to overcome many technical and administrative problems to approve the outstanding state plans. Defendants asked this Court to modify the July 1983 Order to allow sufficient time— far longer than plaintiffs suggested[6]—for the Administrator to take appropriate action and they requested an extension of time in three additional jurisdictions (Minnesota, Texas and the Northern Mariana Islands) not mentioned by plaintiffs. In February 1987, defendants moved for leave to file a revised schedule for one state (Alabama), which the Court granted on February 17, 1988. Defendants supplemented their motions in September 1987 and April 1988 with status reports to the Court. On April 18, 1988, defendants moved to file a revised schedule with respect to four states (Indiana, Alabama, Minnesota and Texas). For the reasons set forth below, plaintiffs' motion to enforce will be denied, and defendants' motions to modify and to file a revised schedule will be granted.

III. Analysis

A. *Jurisdiction*

Before turning to the merits, it bears mentioning that this Court has jurisdiction to enforce or modify the July 1983 Order. Paragraph 4 of the Order expressly stated that

Jurisdiction is retained to assure compliance with the [Settlement] Agreement, [and] to consider requests for modifications thereto ... Jurisdiction shall terminate 30 days after final approval by the Administrator, pursuant to 42 U.S.C. § 7410(a)(2), or federal promulgation, pursuant to 42 U.S.C. § 7410(c)(1), of lead implementation plans for all states whose plans have not, as of the date of the Agreement, been approved by the Administrator.

Because all state plans have not been approved (or FIPS developed in their place) and because the parties now seek to enforce and to modify the July 1983 Order, this Court has jurisdiction to consider their requests.[7]

B. *Violation of the July 1983 Order*

NRDC's motion to enforce asks this Court to declare that defendants' inability to approve SIPS or promulgate FIPS has violated the Settlement Agreement incorporated into its July 1983 Order. Such a declaration can be made without hesitation. By the terms of the Settlement Agreement, the Administrator agreed to approve or disapprove each state plan by August 1, 1984 and, if the SIP was rejected, to publish a proposed FIP by October 1, 1984. These dates passed without compliance by defendants. Moreover, in their September 22, 1987 Status Report, defendants could only state that approval has been given to only one state plan (Nebraska's) of the seven that were in issue as of that time. Thus, more than three *years* have passed since the deadlines set for action by EPA. In such a case, defendants do not, nor could they, deny that they have not adhered to the terms of the Settlement Agreement.

4. At the time the motion was filed, for example, the Administrator had not taken final action on Alabama's SIP, almost 31 months after a final determination was due. *See* Motion at 18.

5. Under plaintiffs' proposed schedule, final approval or disapproval would take place within 15 days of an Order by this Court, publication of a proposed FIP within 45 days and promulgation of a final FIP within 90 days.

6. In Indiana, for example, defendants stated that final approval of the state's plan could take place between December 1987 and February 1988 and, if the state's plan was not approved, a FIP could be promulgated by January 1989.

7. None of the parties disputes this conclusion.

## C. *Schedule for Compliance*

The only dispute now remaining between the parties concerns the pace of implementation of SIPS and FIPS at two sources: Hammond Lead Products, Inc., Halox Division, Hammond, Indiana (Hammond) and Interstate Lead Company, Inc., Alabama (ILCO).[8] Before proceeding to resolve that question, the Court should note that defendants have recently achieved considerable progress in their attempts to approve SIPS required by the Settlement Agreement. As of late 1987, state plans had not been approved in seven states: Alabama, Indiana, Nebraska, New Jersey, Minnesota, Texas and the Northern Mariana Islands. Since that time, however, final approval was given to SIPS in Nebraska, New Jersey, Minnesota, Texas and the Northern Mariana Islands. *See* Defendants' April 18, 1988 Status Report and May 27, 1988 Reply Brief. Thus, although defendants prior footdragging was inexcusable and did amount to a violation of this Court's July 1983 Order, substantial compliance has now been achieved in five of the seven jurisdictions that had been disputed. The Court applauds these accomplishments—despite the fact that they have come so late in the day.

As noted above, plaintiffs' remaining challenges relate solely to Hammond and ILCO. As to Hammond, defendants state that final SIP approval will occur by September 30, 1989 and that, if needed, final FIP approval will take place by December 31, 1989 (or June 30, 1990 if technical problems arise). With respect to ILCO, approval for the SIP is anticipated on December 1, 1988 and for the FIP (if one is needed) by March or October of 1989. NRDC takes issue with these timetables, suggesting instead dates several months earlier for each. *See* Opposition at 17.

Defendants have submitted a number of affidavits from responsible EPA officials detailing the technological, administrative and budgetary considerations—not to mention the problems of interaction with state officials—that have constrained the agency as it seeks to grant approval to the remaining SIPS. These factors, however, in no way excuse the agency's record to date, and the Court is satisfied that some of the deadlines suggested by NRDC are warranted. The Court will thus grant defendants' modification requests in part. Dismayed at the amount of time that has elapsed since the Congressionally-mandated deadlines have passed, defendants will be compelled to adhere to a modification of the proposals advanced by NRDC. Accordingly, final action on the Hammond SIP shall take place no later than July 31, 1989 and final action on a FIP must occur no later than December 31, 1989. The ILCO SIP must be completed by December 1, 1988; final action on the ILCO FIP shall be accomplished by June 1, 1989. These dates take into consideration any technical problems that might arise.

Moreover, NRDC should return to this Court for appropriate relief should it appear that defendants have failed to adhere to the schedule now being approved or appear to be moving too slowly to accomplish their mission by the proposed dates. The Court intends to closely monitor defendants' status reports to assure that compliance proceeds as now envisioned. No further extensions for this long-delayed compliance will be permitted.[9]

## IV. Conclusion

For these reasons, it is

DECLARED that defendants have violated this Court's July 26, 1983 Order and Decree by failing to approve state implementation plans and promulgate federal implementation plans within the time periods set forth in the Settlement Agreement attached to that Order; it is

FURTHER ORDERED that plaintiffs' motion to enforce this Court's July 26, 1983

---

**8.** *See* Plaintiff's Opposition to Defendants' April 18, 1988 Motion to File Revised Schedule at 2.

**9.** Finally, plaintiffs' request to require defendants to produce status reports every two months, rather than every three months, will be denied. Although defendants were tardy in producing their last report, the Court sees no reason to punish them for this failure. In the future, however, reports shall be filed *promptly.*

Order and Decree be and it hereby is granted in part and denied in part; it is

FURTHER ORDERED that defendants' motion for leave to file a revised schedule be and it hereby is granted; and it is

FURTHER ORDERED that defendants' motion to modify this Court's Order and Decree be and it hereby is granted in part and denied in part.